## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ANNAMARY ENRIGHT STUCKEY**                    **CIVIL ACTION NO.**

**VERSUS**

                                                 **21-200-BAJ-EWD**

**COMMISSIONER OF SOCIAL
SECURITY**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 2, 2022.

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**ANNAMARY ENRIGHT STUCKEY**                    **CIVIL ACTION NO.**

**VERSUS**

**COMMISSIONER OF SOCIAL**                      **21-200-BAJ-EWD**
**SECURITY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Annamary Enright Stuckey ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB").[1] Plaintiff has filed a Memorandum in Support of Appeal[2] and the Commissioner has filed an Opposition Memorandum.[3] Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision and the administrative law judge applied the correct legal standards. Accordingly, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On or about March 19, 2019, Plaintiff filed an application for DIB alleging disability beginning on June 1, 2018.[4] At the time of the application, the Commissioner determined that the date that Plaintiff will last meet the insured status requirements of the Social Security Act is

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)]." *See* R. Doc. 1 and AR pp. 155-56 (Application Summary for DIB, noting that the Commissioner spoke with Plaintiff about her application on March 19, 2019) and AR p. 22 (Administrative Law Judge's ("ALJ") decision noting the date of application to be March 18, 2019). Plaintiff's Form SSA 1656 appointing counsel incorrectly reflects that Plaintiff also sought supplemental security income. AR p. 148.

[2] R. Doc. 12. Although Plaintiff filed a reply brief, it is incomplete and contains no substantive argument. R. Doc. 15.

[3] R. Doc. 14.

[4] AR pp. 155-56 and *see, e.g.*, AR pp. 22, 72, 172 (disability onset date).

December 31, 2023.[5]  The DIB claim was initially denied on August 21, 2019.[6]  Plaintiff sought reconsideration of the initial denial.[7]  The denial of the DIB claim was affirmed after reconsideration, including review of additional evidence.[8]  Thereafter, Plaintiff timely requested a hearing before an ALJ.[9]  A telephonic hearing was held on June 29, 2020, at which Plaintiff, who was represented by counsel, testified.[10] Vocational Expert ("V.E.") John M. Yent ("Yent") also testified.[11] On July 15, 2020, the ALJ issued a notice of unfavorable decision.[12]  Plaintiff timely requested review by the Appeals Council.[13]  Plaintiff was represented by counsel in her request for review.[14]  On February 5, 2021, the Appeals Council denied Plaintiff's request for review.[15]

On April 8, 2021, Plaintiff timely filed her Complaint in this Court.[16]  Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[17]

---

[5] AR pp. 23-24, 72, 172.  Plaintiff's earnings history is at AR pp. 157-71.

[6] AR pp. 72-83 and *see* AR pp. 99-102, transmittal of denial to Plaintiff.  The ALJ's decision erroneously states that the date of denial was August 23, 2021.  AR p. 22.

[7] AR p. 105.

[8] AR pp. 85-97, January 2, 2020 affirming denial on reconsideration and AR pp. 106-08, transmittal of decision to Plaintiff.

[9] AR p. 109.  Plaintiff requested the hearing on January 31, 2020.  *Id*.

[10] AR pp. 148-51 (fee agreement and appointment of representatives); AR pp. 110, 126, 145 (acknowledgement of hearing request, notice of hearing, and acknowledgment of receipt); and AR pp. 37-71(transcript of hearing).  Despite initially objecting to a telephone hearing, Plaintiff subsequently consented to one. AR p. 125 but *see* pp. 41, .1270.  Plaintiff also waived the right to a 75-day notice of hearing.  AR p. 41.  *See also* Plaintiff's post-hearing brief to the ALJ at AR pp. 289-93.

[11] AR p. 283 (resume).

[12] AR pp. 19-36.

[13] AR pp. 152-54, July 22, 2020 request for review.

[14] AR pp. 294-96, Plaintiff's brief to the Appeals Council submitted through counsel.

[15] AR pp. 1-4.

[16] R. Doc. 1. The copy of the Appellate Council's decision attached to Plaintiff's Complaint reflects that Plaintiff received the decision on February 12, 2021. R. Doc. 1-1, p. 2.

[17] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[18]  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[19]

## III. THE ALJ'S DECISION

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[20]  The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[21]   In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[22]

The burden rests upon the claimant to prove disability throughout the first four steps of this

---

[18] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[19] *Bruno, M v. U.S. Commissioner, Social Security Administration,* No. 19-00886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom., Bruno v. Commissioner, Social Security Administration*, No. 19-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) *citing Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[20] 20 C.F.R. § 404.1505.
[21] 20 C.F.R. § 404.1520.
[22] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

five-step process.[23]  If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[24]  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[25]

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the June 1, 2018 alleged onset of disability.[26] At the second step, the ALJ found that Plaintiff had the following severe impairments: inflammatory arthritis; degenerative disorders of the back, dysfunction of major joints (feet); and migraines.[27] Plaintiff's anxiety disorder was found non-severe because she had only "mild" limitations in the first (understanding, remembering, or applying information) and third (concentrating, persisting, or maintaining pace) functional areas and no limitation in the second (interacting with others) and fourth (adapting or managing oneself) functional areas.[28]   The ALJ found that these findings were supported by the State agency psychiatric review techniques ("PRT") completed by Gary Lindsay, Ph.D. ("Lindsay"), and Joseph Kahler, Ph.D. ("Kahler").[29]   The ALJ found Lindsay's and Kahler's findings persuasive, as they were well supported and consistent with the records as a whole. Furthermore, Plaintiff testified that she had not seen mental health practitioners and had not taken medication for anxiety or depression.[30]

---

[23] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[24] 20 C.F.R. § 404.1520(g)(1).
[25] *Muse*, 925 F.2d at 789.
[26] AR p. 24.  Plaintiff testified that she stopped working in May 2018.  AR p. 46.
[27] AR p. 25.
[28] AR p. 25.
[29] AR p. 25 citing AR pp. 76-77 (Lindsay's July 11, 2019 PRT on initial review) and AR pp. 89-91 (Kahler's January 2, 2020 PRT on reconsideration).  Both PRTs note that the evidence did not establish the presence of the "C" criteria. AR pp. 76 and 90, and *see* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12:00(G).
[30] AR p. 25 and *see* AR pp. 64-65 (Plaintiff testified that she does not see any mental health providers and does not take any medication for anxiety or depression).

At the third step, the ALJ found that Plaintiff's impairments,[31] considered alone or in combination, did not meet or medically equal the criteria under (1) listing 1.02, major dysfunction of a joint(s) (due to any cause), and listing 1.04, disorders of the spine; (2) listing 12.06, anxiety and obsessive-compulsive disorders; (3) listing 14.09, inflammatory arthritis; or any other listed impairment.[32]   Next, the ALJ found that Plaintiff had the RFC[33] to perform sedentary work as defined in 20 C.F.R 404.1567(a),[34] except she is precluded from climbing ladders, ropes, and scaffolds and is able to only occasionally climb ramps and stairs.[35] In making this finding,  the ALJ considered Plaintiff's testimony, the medical evidence of record from a variety of sources, the state agency RFC assessment completed by Sarah Yoakam, M.D. ("Yoakam"), which was affirmed by Charles Gruenwald, M.D. ("Gruenwald"), and the "Physical Assessment" completed by Plaintiff's doctor, Angele Bourg, M.D. ("Bourg").[36]  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record,

---

[31] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listed impairment, he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990), *superseded by statute on other grounds* (citations omitted); 20 C.F.R. § 404.1525.

[32] AR p. 26.

[33] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis.  It is the foundation of the findings at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1545.

[34] "Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[35] AR p. 26.

[36] AR pp. 26-30 (citations omitted).

which the ALJ addressed in his decision.[37] Because the demands of Plaintiff's past work exceeded the RFC, Plaintiff was unable to perform her past relevant work.[38]

Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines as a framework and the testimony of the V.E. to make his disability finding.[39] Specifically, the ALJ found that Plaintiff was a younger individual aged 18-44 at the alleged onset date of disability but was a younger individual age 45-49 at the time of the decision, and that Plaintiff had at least a high school education.[40] To determine the extent to which Plaintiff's limitations eroded the occupational base of semi-skilled work[41] at the sedentary level, the ALJ relied on the testimony of the V.E. regarding whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC. The V.E. considered these factors and testified that Plaintiff could perform the requirements of the following sedentary, semi-skilled occupations: (1) appointment clerk, of which there are 130,146 jobs in the national economy;[42] information clerk,

---

[37] AR p. 30.

[38] AR p. 31 and *see* AR p. 65.

[39] AR pp. 31-32. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The Commissioner may use V.E. testimony at steps four and five of the sequential evaluation process to resolve complex vocational issues and provide evidence at the hearing before the ALJ. SSR 00-04P, 2000 WL 1898704.

[40] AR p. 31. *See* 20 C.F.R. § 404.1563 and AR p. 155 (Plaintiff's birthday is April 16, 1975). *See* 20 C.F.R. § 404.1564 and Plaintiff's testimony at AR p. 45 (Plaintiff can speak, read, and understand English and has a college degree).

[41] The ALJ's decision refers to the determination being made as to the extent to which Plaintiff's limitations eroded the "unskilled" sedentary occupational base, which appears to have been an error but is not prejudicial. AR p. 31. In response to the ALJ's questions, the V.E. provided representative occupations representing the *semi-skilled* sedentary occupational base. AR p. 65. The semi-skilled representative occupations provided are consistent with Plaintiff's reported educational and professional background, *i.e.*, a college degree and relevant past work as a *skilled* elementary and physical education teacher. *See* 20 C.F.R. § 404.1564(b)(1)(4): "High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." As Plaintiff previously performed a skilled job and was found to have only a mild limitation in two of the paragraph B criteria (discussed *infra*), the evaluation of her ability to perform semi-skilled jobs (or unskilled jobs) is not inconsistent as there was no mental limitation in the RFC. The fact that semi-skilled jobs, instead of skilled jobs, were considered would account for Plaintiff's mild mental limitations.

[42] DOT 237.367-010, sedentary, SVP-3 *and see* AR pp. 65-66. Specific Vocational Preparation ("SVP") is the amount of lapsed time needed to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. SVP comes from vocational education, civilian, military, and institutional work experience, apprenticeship, and from in-plant and on-the-job training. SVP-3 and SVP-4 are considered semi-skilled. *See* SSR 00-4p, 20 C.F.R. § 404.1568(a), and U.S. Department of Labor, Employment and

of which there are 103,515 jobs in the national economy;[43] and order clerk, of which there are

72,345 jobs in the national economy.[44] Based on this information, the ALJ found that Plaintiff had

not been under a disability from the alleged onset date through the date of his decision.[45] The

Appeals Council denied review of the ALJ's decision that Plaintiff was not disabled.[46]

## IV.  PLAINTIFF'S ASSIGNMENTS OF ERROR

On appeal, Plaintiff argues the following four assignments of error: (1) the physical RFC

is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion

of Dr. Bourg; (2) the RFC is not supported by substantial evidence because the ALJ appears to

have crafted the RFC "out of whole cloth" instead of developing the record; (3) the ALJ failed to

properly consider Plaintiff's subjective allegations; and (4) the ALJ failed to craft an RFC that

accurately accounted for Plaintiff's mental limitations.[47]

## V.  LAW AND ANALYSIS

If substantial evidence supports the Commissioner's findings, they are conclusive and must

be affirmed.[48]  Substantial evidence is that which is relevant and sufficient for a reasonable mind

to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a

preponderance.[49] A finding of no substantial evidence is appropriate only if no credible evidentiary

choices or medical findings support the decision.[50] Conflicts in the evidence are for the

---

Training Administration, Stock No. 029-013 00095-1, The Revised Handbook for Analyzing Jobs (1991) found at https://skilltran.com/index.php/support-area/documentation/1991rhaj, p. 8-1.

[43] DOT 237.367-022, sedentary, SVP-4 *and see* AR p. 66

[44] DOT 249.362-026, sedentary, SVP-4 *and see* AR p. 66  Plaintiff did not pose any questions to the V.E.  AR p. 68. Citing SSR 00-4P (S.S.A. Dec. 4, 2000), 2000 WL 1898704, the ALJ specifically found that the VE's testimony was consistent with the information contained in the DOT.  AR p. 32.

[45] AR p. 32.

[46] AR pp. 1-3.

[47] R. Doc. 12.

[48] *Richardson v. Perales*, 402 U.S. 389-90, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (superseded by statute on other grounds, *see Stancle v. Colvin,* No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).

[49] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[50] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[51]  In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[52]

What Plaintiff really seeks is to have this Court reweigh the evidence in this case and come to a different conclusion than the Commissioner.  The Court is not permitted to do so.  While there is evidence in the record that could have permitted the ALJ to reach a different conclusion regarding whether Plaintiff's impairments render her disabled, the ALJ applied the correct legal standards and substantial evidence supports his findings.

### A. Substantial Evidence Supports the ALJ's Consideration and Treatment of The Medical Evidence In Crafting the Physical RFC (Assignment of Errors 1 and 2)

1. Revised Legal Standard on Treatment and Articulation of Medical Opinions and Prior Administrative Medical Findings

As Plaintiff and the Commissioner agree,[53] consideration of medical opinions[54] (and prior administrative medical findings) is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims, such as Plaintiff's, filed after March 27, 2017.[55]  As correctly cited by the ALJ, 20 C.F.R. § 404.1520c provides that the Commissioner will not defer or give any specific

---

[51] *Masterson v. Barnhart*, 309 F.3d at 272; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[52] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[53] R. Doc. 12, pp. 8-9, 12 and R. Doc. 14, pp. 5-6.

[54] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities.  These may include the claimant's ability to (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding, remembering, maintaining concentration, persistence, or pace, carrying out instructions, or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes.  20 C.F.R. § 404.1513(a)(2).

[55] *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017), for a discussion of the revisions.

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's medical sources.[56]  When a medical source[57] provides one or more medical opinions or prior administrative medical findings, the medical opinions or prior administrative medical findings from that medical source are to be considered together using the factors listed in (c)(1) through (c)(5) of 20 C.F.R. § 404.1520c.  The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually.

The most important factors considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability[58] and consistency.[59] The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) and (c)(5) factors, *i.e.*, relationship with the claimant,[60] specialization, and "other factors."[61]  Only if the ALJ finds that there are two or more medical opinions or prior administrative medical findings about the same issue that are both equally well-supported and consistent with the record but are not exactly the same, must the ALJ articulate

---

[56] *See* 20 C.F.R. § 404.1520c(a).  The revised regulations did not retain the "treating source rule," which could require deference to treating source opinion evidence.   *See* 20 C.F.R. § 404.1527, which continues to apply to claims filed before March 27, 2017.

[57] The revised regulation no longer uses the term "treating source," but rather "medical source" to refer to the sources of medical evidence proffered by the claimant.

[58] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[59] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

[60] This includes consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[61] *See* 20 C.F.R. § 404.1520c(b)(2) and 20 C.F.R. § 404.1520c(c)(5), which explain consideration of "other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."

9

consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination.[62]

> 2. The ALJ Adequately Considered The Medical Evidence of Record Under 20 C.F.R. § 404.1520c
>
> > a. *The ALJ Did Not Err When He Rejected Dr. Bourg's Physical Assessment, Which He Found Inconsistent and Unsupported*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Bourg, Plaintiff's rheumatologist, expressed in Dr. Bourg's October 29, 2019 "Physical Assessment," because, when developing Plaintiff's RFC, the ALJ did not analyze the factor of consistency as to Dr. Bourg's opinion under the new regulations.[63]  In the Physical Assessment, which required responses to a questionnaire containing check boxes and fill-in-the-blanks, Dr. Bourg diagnosed Plaintiff with seropositive rheumatoid arthritis and opined that Plaintiff: would need to recline or lie down in excess of typical breaks; could sit and stand/walk for two hours each in an eight-hour workday; and would need to take a fifteen minute break every hour. According to Dr. Bourg, Plaintiff was expected to miss more than four days of work per month and would need for a fifteen minute break every hour.  Additionally, Dr. Bourg opined that Plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration to perform simple tasks. Plaintiff could occasionally lift and carry less than ten pounds, but never anything ten pounds or heavier. She could use her hands to grasp, turn, and twist objects five percent of the workday, but could use her fingers for fine manipulation and arms for reaching ten percent of the workday.[64]  Plaintiff

---

[62] 20 C.F.R. § 404.1520c(b)(3).
[63] R. Doc. 12, p. 12, citing 20 C.F.R. § 404.1520c(c)(2) and *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020).  *See* AR pp. 1249-50 (Physical Assessment) and *see, e.g.*, AR pp. 1253-56 (record of visit with Dr. Bourg).
[64] AR pp. 1249-50.

contends that these limitations preclude Plaintiff from working, particularly in light of the V.E.'s testimony that two or more absences a month could not sustain employment,.[65]

"Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ."[66] Contrary to Plaintiff's that the ALJ did not explain the basis for the weight he accorded Dr. Bourg's opinion, he did so. The ALJ found Dr. Bourg's Physical Assessment unpersuasive because "[t]he limitations assessed by Dr. Bourg, including the ability to sit only two hours out of an eight-hour period and use of the hands for fine manipulation only ten percent of a workday and gross manipulation only five percent of a workday are not explained in the form, nor are they supported by Dr. Bourg's treatment notes, which consistently show no synovitis,[67] full range of motion, and full strength"[68] As noted by the Commissioner, the ALJ was precluded by 20 C.F.R. § 404.1520c from giving controlling weight to the medical opinion of any medical source in his determination of disability. In discounting Dr. Bourg's opinion, the ALJ addressed the supportability and consistency of the opinion. The ALJ did not err when he declined to incorporate the limitations in the Physical Assessment in the RFC.

b. *The ALJ Developed the Record and Was Not Required to Contact Dr. Bourg, Order a C.E., Or Send Interrogatories*

Plaintiff argues that it was improper for the ALJ to discount Dr. Bourg's Physical Assessment because it lacked explanation. Moreover, the ALJ could have contacted Dr. Bourg, requested a consultative examination ("C.E."), or sent interrogatories to an expert to get further

---

[65] R. Doc. 12, pp. 12-13, citing AR pp. 1249-50, 67-68 (V.E. testimony) and SSR 85-15.
[66] 20 C.F.R. § 404.1546 and *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012)(citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995).
[67] Synovitis is the inflammation of a synovial (joint-lining) membrane. www.healthcentral.com/condition/synovitis.
[68] AR p. 30, citing AR pp. 567, 387, and 1255 (Dr. Bourg visits on 3/16/18, 2/14/19, 10/28/19) and *compare* to AR pp. 1249-50. *See also* R. Doc. 14, p. 7. Dr. Bourg's arm limitation, *i.e.*, that Plaintiff could only use her arms for reaching for ten percent of an eight hour workday (AR p. 1249), is also contradicted by Plaintiff's testimony. In response to a question regarding whether she had any problems with her arms reaching out in front of her to grab a plate or utensils, Plaintiff responded: "It's not so much moving the arms." AR pp. 59-60.

explanations.[69]  First, the ALJ did not ignore the Physical Assessment.  Rather, he evaluated the opinions expressed and, because he found that the Physical Assessment lacked supporting explanation, and was also contradicted by the medical records, he found the Assessment unpersuasive. While the ALJ is not required to reject a check-the-box medical opinion,[70] he was not required to adopt it, either.  The ALJ is tasked with weighing the evidence, and the ALJ is correct that the Physical Assessment lacks supporting explanations, which is appropriately considered when affording it weight.[71]  The ALJ was also not required to contact Dr. Bourg, send interrogatories, or order a C.E.[72]  "[T]he ALJ has the discretion to order a consultative examination."[73]  However, "[w]hen evidence in the record supports a conclusion that appellant is

---

[69] R. Doc. 12, pp. 9, 15.

[70] While Plaintiff relies on *Gittens v. Astrue*, No. CV 04-2363, 2008 WL 631215, *5 (N.D. Tex. Feb. 29, 2008) (R. Doc. 12, p. 9) for the proposition that there is no binding authority requiring the court to reject a checklist as medical opinion, *Gittens* goes on to note that the cases relied on to reject the checklist were distinguishable because, in those cases, "the ALJ explained that the information on the checklist was inconsistent with other medical evidence." *Id.*, at *5.  As the ALJ in this case also explained why the Physical Assessment was inconsistent with other medical evidence, Plaintiff's reliance on *Gittens* is misplaced.

[71] *See* R. Doc. 14, pp. 6-7 and *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("[W]e have consistently held that the Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case."). *See also, Foster v. Astrue,* 410 Fed.Appx. 831, 833 (5th Cir. 2011) (noting that the treating physician's assessment of the plaintiff in a "questionnaire" format typifies "brief or conclusory" testimony which was not entitled to considerable weight under the prior framework for evaluating medical evidence, and affirming the magistrate judge's conclusion that "…due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, Dr. Chapman's opinion [in response to a questionnaire] is given little weight.").  *See also DeJohnette v. Berryhill,* 681 F. App'x 320, 321–22 (5th Cir. 2017) (affirming the ALJ's decision to afford little weight to the plaintiff's treating physician's response to a form under the prior framework because she failed to provide any explanation supporting her conclusions, and holding: "The ALJ was well within its discretion to conclude that Dr. Agarwal's checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability.").

[72] Notably, Plaintiff did not request a C.E. during the ALJ hearing or in her post-hearing brief, although she did request interrogatories to a medical expert.  AR pp. 68, 292.  Thereafter, Plaintiff requested a C.E., in the alternative, in her brief to the Appeals Council. AR p. 295.  However, the ordering of a C.E. and medical expert testimony is at the ALJ's discretion.

[73] *Sterling v. Commissioner Social Sec. Admin.,* No. 06-1868, 2008 WL 594503, at *6 (W.D. La. Feb. 3, 2008) (citations omitted); *Saenz v. Berryhill,* No. 18-156, 2019 WL 4061551, at *13 (S.D. Tex. July 15, 2019), report and recommendation adopted sub nom*., Saenz v. Saul, N*o. 18-00156, 2019 WL 4055001 (S.D. Tex. Aug. 28, 2019) ("The decision to order a consultative exam, however, is discretionary. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Full development 'does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.' *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original); *Jones v. Bowen*, 829 F.2d 524, 526 (same).").  *See also Mayfield v. Berryhill,* No. 4:17-CV-1059, 2018 WL 4208089, at *4 (S.D. Tex. Sept. 4, 2018) (same). *See* R. Doc. 14, pp. 8-9.

not disabled, a consultative exam is not necessary."[74] The Commissioner is not required to request a C.E., contact any of Plaintiff's medical providers or obtain a medical expert's testimony.[75] Rather, in any individual case, the ALJ may exercise discretion and request a C.E. if he cannot obtain the information needed from a claimant's medical sources or from the existing medical evidence, or if there is an unresolvable inconsistency in the evidence or an insufficiency of evidence that prohibits a determination of the claims. In this case, because the ALJ was able to assess Plaintiff's RFC considering her impairments based on the existing medical evidence and Plaintiff's testimony, the decision to resolve the case on the evidence presented, without a C.E., is not erroneous.[76]

Additionally, Plaintiff has not shown that she was prejudiced by the failure to obtain a C.E. or any other purported lack of record development.[77] "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and

---

[74] *Isbell v. Colvin,* No. 14-006-C, 2015 WL 1208122, at *3 (N.D. Tex. Mar. 16, 2015), citing *Turner,* 563 F.2d at 671. *See Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir. 1989), *citing Jones,* 829 F.2d at 526 ("The decision to require such an examination is within the discretion of the ALJ.").

[75] *See* 20 C.F.R. § 404.1520b regarding incomplete or inconsistent evidence: "(i) We *may* recontact your medical source.") (emphasis added). *See Macias v. Astrue,* No. 408-3681, 2010 WL 376268, at *6 (S.D. Tex. Jan. 26, 2010), citing *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989) (An ALJ is not required to consult a medical expert for evaluation of mental RFC evidence, even in cases in which an expert has been consulted regarding physical limitations); *Dominguez v. Astrue,* 286 F. App'x 182, 186 (5th Cir. 2008) ("...the ALJ was not required to obtain medical expert testimony to determine whether his alcohol use was disabling; the use and consideration of medical expert testimony is solely within the discretion of the ALJ.") (citations omitted); *White v. Soc. Sec. Admin.,* 129 Fed. Appx. 905, 906 (5th Cir. 2005) ("...the record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.") (citations omitted).

[76] *See Sterling*, 2008 WL 594503, *6 (holding that the plaintiff failed to demonstrate that a C.E. was required in order for the ALJ to make his disability determination when the medical records provided sufficient information regarding the plaintiff's condition and noting: "Sterling has pointed to no evidence that would have been adduced that could have changed the result....."). While Plaintiff argues that further development of the record is necessary, she does not offer an argument as to why she contends the record is inadequate. Rather, this argument appears to be an attempt by Plaintiff to obtain a more favorable medical opinion in support of a more restrictive RFC. *See, e.g.,* R. Doc. 12, p. 16 (Plaintiff contends that: "further development of the record 'could result in a finding of disability due to the inability to sustain a job due to expected absences, the need to avoid the public, or manipulative limitations."). However, this attempt conflicts with the revised framework, which precludes the ALJ from giving deference to any particular medical opinion. 20 C.F.R. § 404.1520c.

[77] *Saenz,* 2019 WL 4061551, **13-14, citing *Connie G. v. Berryhill,* No. 3:17-03342-M (BT), 2019 WL 1294441, at *2 (N.D. Tex. Mar. 21, 2019) (citing *Jones v. Astrue,* 691 F.3d 730, 734 (5th Cir. 2012)).

that the additional evidence might have led to a different decision."[78] Put another way, Plaintiff "must show that [she] could and would have adduced evidence that might have altered the result."[79] Plaintiff has not shown the existence of any evidence that might have changed the outcome of this case. Accordingly, even if the ALJ somehow erred by not ordering a C.E., or more fully developing the record, Plaintiff has not shown that she was prejudiced by this error and therefore is not entitled to relief.

c. *The ALJ Considered Plaintiff's Other Impairments*[80]

Plaintiff next argues that just because Dr. Bourg's treatment notes show no synovitis and show full range of motion and full strength on three occasions, these findings do not preclude a determination of disability. Plaintiff contends that her signs and symptoms of R.A. "wax[] and wane[]," and that she experiences fatigue caused by her R.A. and the effects of immunosuppressant medication.[81] Plaintiff argues that the ALJ "crafted the RFC out of whole cloth instead of developing the record," and should not be permitted to "play doctor" or be permitted to "pick and choose" the evidence supporting his position and ignore Dr. Bourg's various other findings *e.g.*, that Plaintiff had moderate tenderness of the bilateral trochanteric bursa,[82] tenderness to the left lumbar spine, and injections; Plaintiff still had increased stress and anxiety, lack of concentration, fatigue, headaches, and poor sleep despite holding a new job; Plaintiff had been referred for

---

[78] *Saenz,* 2019 WL 4061551, at *14, citing *Ripley,* 67 F.3d at 557, n. 22 (other citations omitted).
[79] *Saenz,* 2019 WL 4061551, at *14, citing *Brock v. Chater,* 84 F.3d 726, 728-29 (5th Cir. 1996) (noting that a claimant "must show that [she] could and would have adduced evidence that might have altered the result.").
[80] To the extent Plaintiff alludes to her anxiety and subjective allegations in Assignments of Error 1 and 2, Plaintiff's mental impairments are discussed in the context of Assignment of Error 4 and her subjective allegations are addressed in the context of Assignment of Error 3. R. Doc. 12, pp. 1, 11, 22-25.
[81] R. Doc. 12, p. 10.
[82] Trochanteric bursitis is inflammation of the bursa (fluid-filled sac near a joint) at the part of the hip called the greater trochanter. When the bursa becomes irritated or inflamed, it causes pain in the hip.
 https://my.clevelandclinic.org/health/diseases/4964-trochanteric-bursitis.

workup due to a dysfunctional immune system; and Plaintiff had influenza at least four times in a year, among other findings and records of impairments from other providers.[83]

The ALJ took into consideration Plaintiff's other noted impairments, including Dr. Bourg's various other findings regarding the physical impairments argued by Plaintiff above, as well as those by other providers.[84] After evaluating this evidence, the ALJ found that Plaintiff's determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[85] In particular, Plaintiff's R.A., spine and feet disorders, and headaches were longstanding, but the records reflected that Plaintiff continued to work despite these impairments.[86] The ALJ also correctly found that the evidence did not indicate any significant worsening in her impairments at the time of the alleged onset date.[87] Plaintiff's headaches were described as stable

---

[83] R. Doc. 12, pp. 10-11,13 also noting Plaintiff was tearful and exhausted; Plaintiff had pain in her hands, back, and hips; Plaintiff had difficulty sitting and standing for long periods of time; and Plaintiff's therapy was unsuccessful. (record citations omitted).

[84] *See* AR pp. 28-29, noting Dr. Bourg's notes of moderate/mild tenderness at the bilateral trochanteric bursa, tenderness of the lumbar spine, and injections, as well as that Plaintiff was tearful, exhausted, and had not slept well, that Plaintiff has quit her job, that Plaintiff was on immunosuppressant medication, that Plaintiff had pain in her hands, back, and hips, that it was difficult for her to sit and stand for long periods of time, and that Plaintiff had influenza at least four times during visits in December 2018, February 2019, and October 2019. The ALJ also noted that Plaintiff received treatment for migraines, for her feet and ankles, for gastrointestinal ("G.I."), issues, and that she had engaged in physical therapy. AR pp. 28-30, citing Plaintiff's gastroenterologist Gerald Arbour, M.D. ("Arbour") medical records beginning at AR p. 381; Plaintiff's neurologist, Brian Murphy, M.D. ("Murphy") medical records beginning at AR p. 336; Plaintiff's orthopedist, James Lalonde, M.D. ("Lalonde") medical records beginning at AR p. 328 and p. 461; physical therapy records beginning at AR p. 1265 and p. 1281; and Mike Russell, D.D.S. ("Russell") dental records at p. 1273 (temporomandibular joint dysfunction treatment).

[85] AR p. 30.

[86] AR p. 30, citing AR pp. 472, 476, 486, 507, 512, 519, 529, 546, 748 (medical records dating back to 2013 and 2011 physical therapy note indicating that Plaintiff continued to work despite these impairments). The ALJ also noted that a 2017 MRI of Plaintiff's brain was negative. AR p. 28 and *see* AR pp. 337-39. *See Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995), citing *Fraga v. Bowen,* 810 F.2d 1296, 1305 & n. 11 (5th Cir. 1987) (ability to work despite pre-existing condition supports ALJ's finding of not disabled). *See Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990) (affirming the ALJ's determination of no disability and noting that the ALJ found that the claimant's subjective complaints less than credible in part because the claimant worked for years with and despite his alleged disabling impairments but there was no evidence that the claimant's impairments worsened at or near the time work was ceased).

[87] While Plaintiff takes exception to this, citing to Lalonde's medical record at AR p. 445 (noting that Plaintiff is a "tough lady," but her R.A. is "getting to the point that it is limiting what she can do," it should be noted that this

15

and her medications were noted as working well when she followed up with Dr. Murphy in October 2018.[88] The ALJ found that Plaintiff's testimony that she had limited use of her hands was not supported by the objective findings of record, and that the manipulative limitations suggested by Dr. Bourg were unpersuasive.[89]  As evidenced by his citations to the medical record, the ALJ considered Plaintiff's auto-immune limitations, *e.g.*, frequently catching the flu and other infections, and G.I. issues.[90] However, the records showed that Plaintiff continued to work, despite frequent infections.[91]  The ALJ found that Plaintiff received only limited treatment for her G.I. issues, as there was a record of only one visit with Plaintiff's gastroenterologist.[92]

---

record is dated 10/26/10 and does not indicate a worsening of Plaintiff's condition as of the onset date of June 1, 2018.

[88] AR p. 30, citing AR p. 336.

[89] AR pp. 29-30.  *Compare* Plaintiff's testimony at AR pp. 58-60 (Plaintiff's fingers do not work, she has trouble with buttons and zippers, she cannot tie her shoes and sometimes it is painful to hold a knife) *with* AR p. 337 (10/23/18 neurologist Dr. Murphy visit noting "Strength normal, all extremities, coordination normal, reflexes 1-2+ throughout and symmetrical/normal"); AR p. 334 (10/31/17 Dr. Murphy visit noting "gait and station normal, motor strength normal in all extremities and graded 5 out of 5, tone bulk and range of motion of all joints normal."), and AR p. 1294 (8/8/19 visit with gynecologist Michael Perniciaro, M.D. ("Perniciaro") noting Plaintiff denied joint and muscle pain, and denied muscular weakens, incoordination, tingling or numbness).

[90] AR pp. 26-29. Plaintiff believes her G.I. issues are caused by her R.A. medication and they could also be the result of IBS.  AR pp. 52, 381-84.

[91] AR pp. 26-30, citing AR pp. 507, 512, 519, 529, 546.  Plaintiff attributed her recurrent flu to working with young children as a school teacher. AR pp. 46-47 *and, e.g.*, AR pp. 507, 565 (medical records noting Plaintiff's reports of flu at school/from children). However, the representative occupations suggested by the V.E., *i.e.*, appointment/order/information clerk, are unlikely to require the same level of daily exposure to children as during Plaintiff's prior employment.  As for the recurrent staph/nose infections, the ALJ noted that allergist Joseph Redhead, M.D.'s ("Redhead") records indicated that Plaintiff's rhinitis was mild and not severe and no opportunistic infections were noted.  AR p. 28, citing AR p. 378 (12/14/17 visit).  Baton Rouge Clinic Urgent Care Clinic records of a 10/24/17 visit noted that while Plaintiff "gets the flu but is only mildly sick each time she gets it or whether these influenza screens which are positive are all false positives for some reason."  AR p. 547.

[92] AR p. 25, citing AR p. 384 (5/8/18 Dr. Arbour visit diagnosing IBS), and *see* AR p. 381 (noting last G.I. treatment was in 2007).  However, this is the only record of a visit with Dr. Arbour for G.I. treatment. *See Antoine v. Comm'r of Soc. Sec.,* No. CV 14-3381, 2016 WL 4574566, at *4 (W.D. La. June 29, 2016), report and recommendation adopted, No. CV 14-3381, 2016 WL 4626234 (W.D. La. Sept. 1, 2016) ("It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa,* 895 F.2d at 1024 (other citations omitted). Further, Plaintiff testified, "Like you try to learn your body and I try—if I know I'm going out, I try not to eat or something that's going to cause me to have issues." AR p. 58.  Thus, Plaintiff's testimony indicates that she has been able to adequately manage her G.I. symptoms.

d. *The ALJ Explained His Treatment of the State Agency Determinations*

Plaintiff contends that the ALJ did not explain why he found the state agency RFP "only somewhat persuasive," and, while he found that further limitations were needed beyond what the state agency indicated (but not as restrictive as Dr. Bourg's limitations), he failed to explain why his RFC was sedentary with climbing limitations. According to Plaintiff, the RFC lacks substantial support and it not built on a meaningful foundation.[93] The ALJ noted that, while Dr Bourg's Physical Assessment was not persuasive, the assessments of the State Agency consultants Dr. Yoakam and Dr. Gruenwald resulting in a light RFC and no additional limitations were only somewhat persuasive, "because the evidence confirms greater exertional limitations as well as additional limitations on climbing."[94] As such, the ALJ reduced Plaintiff's RFC to sedentary from the "light" classification assigned by the state agency consultants, and included climbing limitations that take into account Plaintiff's R.A. and spine and feet disorders.

Thus, the ALJ considered the evidence of record and did not selectively choose the evidence upon which his findings were based, and he accounted for Plaintiff's impairments in the RFC. The ALJ also did not "play doctor," or substitute his lay opinion for the medical opinion of experts, as alleged by Plaintiff.[95] The record indicates that the ALJ used the medical information

---

[93] R. Doc. 12, pp. 13-14.

[94] AR p. 30.

[95] For these reasons, Plaintiff's authority is either distinguishable, or not supportive of her position. *See* R. Doc. 12, p. 10, citing *Frank v. Barnhart,* 326 F.3d 618 (5th Cir. 2003) (ALJs must be "careful not to succumb to the temptation to play doctor.")(citing *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990).) In *Frank,* the ALJ improperly found that the lack of signs of atrophy or muscle tone loss contradicted the Plaintiff's claims of impairments, which precluded any significant walking, standing, sitting, *etc*. Even so, the Fifth Circuit found the error harmless because "the overwhelming factor in the decision was medical evidence that [claimant] could indeed hold down her old job as a clerical worker. It is inconceivable that the ALJ would have reached a different conclusion on this record …." 326 F.3d at 622. *Tucker v. Comm'r of So. Sec. Admin.,* No. 798CV0207KA, 2001 WL 705801 (N.D. Tex. June 21, 2001), is distinguishable, as in that case, the court held that, while ALJs cannot "pick and choose only the evidence that supports his position," "[o]n this fuzzy record the ALJ may not have become aware of the [plaintiff's] carpal tunnel issue, so it is impossible for me to determine that the ALJ did 'pick and choose,'" and remanded the case for consideration of additional evidence. In this case, the basis for the ALJ's decision is clear. In *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000)*,* the Fifth Circuit held that the ALJ erred when he rejected medical opinions of the plaintiff's treating physicians and the Veterans Administration with no explanation. 219 F.3d at 395. Here, the ALJ provided

17

provided by Plaintiff to determine her RFC.  What Plaintiff characterizes as the ALJ substituting his opinion is actually the ALJ interpreting the medical evidence to determine her capacity for work.[96] Furthermore, an RFC is not a medical assessment, and the ALJ is not confined to medical opinions in drafting an RFC.[97]  Plaintiff's argument ignores that there was other evidence in the record upon which the ALJ based his determination of the limiting effects of Plaintiff's impairments, including evidence that contradicted the limitations in Dr. Bourg's Physical Assessment and the state agency RFP, and thus the ALJ provided an evidentiary basis for his findings.  Accordingly, Assignments of Error 1 and 2 are without merit.

## B. Substantial Evidence Supports the ALJ's Consideration and Treatment of Plaintiff's Mental Impairments (Assignment of Error 4)

In her fourth Assignment of Error, Plaintiff argues that the RFC fails to account for Plaintiff's mental impairments of anxiety disorder, medication side effects, and pain, because the ALJ committed two errors, *i.e.*, the ALJ improperly found that Plaintiff's mental impairments were non-severe and/or failed to take them into account despite being non-severe, and improperly credited the State agency's mental opinions.[98]  As to severity, Plaintiff contends that the medical records show that her mental impairments cause "enough disruption" and "far more than minimal limitations" to Plaintiff's life, including records showing that Plaintiff was tearful, exhausted, depressed, anxious, and that she took Ativan;[99] Plaintiff's testimony shows that her medications

---

explanations.  *Loza* was also decided under the prior regulations regarding the weight given to the medical opinions of treating physicians.

[96] *See* AR pp. 26-30.

[97] *See Joseph-Jack v. Barnhart,* 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject Joseph–Jack's argument that because the record was devoid of a residual function capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. See 20 C.F.R. §§ 416.946, 416.927(e).").  *See* R. Doc. 14, p. 9.

[98] R. Doc. 12, pp. 22-23 and citing SSR 85-28.  However, the ALJ cited SSR 85-28 in support of his step 2 determination.  AR p. 25.

[99] R. Doc. 12, p. 23, citing AR p. 386 (sic, 385, Plaintiff reported being tearful and exhausted), and AP pp. 578, 582, 586, 588, 604 (records of visits with Drs. Bourg and primary care doctor Richard Cooley, M.D. ("Cooley") noting Ativan as one of Plaintiff's active medications).

caused brain fog;[100] and Dr. Bourg found that Plaintiff's symptoms were severe enough to interfere with the attention and concentration required to perform simple work-related tasks.[101]

As at step two, the claimant must prove her impairment is "severe." The Fifth Circuit "defines 'severe impairment' for purposes of step two in the negative: '[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[102] The ALJ found Plaintiff's anxiety non-severe, as Plaintiff had only "mild" limitations in two of the paragraph B criteria, *i.e.*, understand, remember, or apply information, and concentrate, persist, or maintain pace, and no limitation in the other two paragraph B criteria, *e.g.*, interacting with others and adapting or managing oneself.[103] The ALJ considered the state agency PRT,[104] in which Kahler and Lindsay both found that the record evidence established that Plaintiff's behavior, thought content, mood, and affect were normal, and that Plaintiff "is stable on her anxiety medication and has no continued symptoms of a severe mental impairment."[105] Per 20 C.F.R. § 404.1520a, when the degree of the mental limitation is "mild," the mental impairment is found not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in a claimant's ability to do basic work

---

[100] Doc. 12, p. 23, citing AR p. 56.

[101] R. Doc. 12, p. 23, citing AR p. 1249.

[102] *Silvio v. Saul*, No. CV 20-381-BAJ-RLB, 2021 WL 4498991, *4 (M.D. La. Aug. 18, 2021), report and recommendation adopted, No. CV 20-00381-BAJ-RLB, 2021 WL 4497485 (M.D. La. Sept. 30, 2021), citing *Jeansonne v. Paul*, 855 F. App'x 193, 196 (5th Cir. April 12, 2021) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). The ALJ's opinion sets forth the correct standard. *See* AR p. 25, citing SSR 85-28 and *see Jeansonne*, 855 Fed.Appx. at 196 ("We recently held that SSR 85-28 comports with our case law and is an acceptable reference for the proper standard for step two.") (citations omitted).

[103] AR p. 25.

[104] The PRT is not an RFC assessment, but is a tool used to evaluate the severity of mental impairments. 20 C.F.R. § 404.1520a(a).

[105] AR p. 25, citing AR pp. 76-77 and 89-91 and *see* the footnote just below, describing the records finding that Plaintiff had normal mood and affect.

activities.  The ALJ also considered Plaintiff's testimony unequivocally stating that she did not see any mental health providers or take medication for anxiety or depression.[106]

In this case, there was no other evidence indicating that Plaintiff had more than a minimal limitation on Plaintiff's ability to do basic work activities.[107]  In fact, the evidence, including evidence relied upon in the PRT, indicates the opposite—that Plaintiff was consistently found to have normal behavior, mood, and affect, was oriented to person, place, and time, was stable on her anxiety medication[108] and was frequently found not anxious.[109]  Despite Plaintiff's reports of brain fog from her medications and pain, Plaintiff testified and/or reported that she can care for herself, including taking a shower, washing her hair and taking her medication, as well as can care for others, including cooking when she is able and doing laundry and other chores, and can also drive her car to pick up her son, go out by herself, handle money, shop in the store or via computer,

---

[106] AR pp. 25, 27, 64.  Contrary to Plaintiff's suggestion, the fact that the ALJ noted this testimony was not "chastis[ing]" to Plaintiff. R. Doc. 12, p. 24 (citing out of circuit, non-controlling authority). Rather, it is evidence relevant to the severity of Plaintiff's mental impairment and her ability to work.  *See Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) (affirming finding that the plaintiff did not have a severe mental impairment and noting that the medical records showed that the plaintiff did not take any medications for his mental health complaints and failed to seek mental health care even after he was twice referred for mental health treatment at his request, and could not show that he was so functionally impaired by his mental impairment that he was precluded from engaging in substantial gainful activity).

[107] Dr. Bourg's Physical Assessment does not contain a specific mental limitation.  At most, it opines that Plaintiff's symptoms would be severe enough to interfere with her attention and concentration to perform work-related tasks "frequently." AR p. 1249. Even so, substantial evidence supports the ALJ's rejection of it as non-persuasive.

[108] Medical impairments that reasonably can be remedied or controlled by medication or treatment are not disabling. *Mulet-Rivera v. Barnhart,* 437 F.Supp.2d 616, 633 (S.D. Tex. 2006) citing *Glenn v. Barnhart,* 124 Fed.Appx. 828, 829 (5th Cir. 2005) (citing *Johnson,* 864 F.2d at 347 (5th Cir. 1988) (other citations omitted).

[109] Plaintiff's treatment notes across providers over the years consistently reflect that Plaintiff had normal mood, affect, and behavior and that she was oriented and alert.  *See* AR pp. 583, 589, 1255 (2/14/19, 10/28/19, 12/28/18 Dr. Bourg visits noting negative for depression and anxiety, alert and oriented x 3, normal affect, and one of Plaintiff's current medications is Ativan); *See* AR pp. 403, 502, 535, 571, 579, 1260 (12/7/15, 9/22/17, 4/3/18, 8/24/18, 5/2/19, 11/11/19 visits with Dr. Cooley noting normal mood, affect, and behavior and/or alert and oriented); *See* AR p. 381 (12/14/17 visit with Redhead (noting same); AR p. 383 (5/8/18 visit with Plaintiff's gastroenterologist, Dr. Arbour noting "Negative for agitation and behavioral problems. The patient is not nervous/anxious.").  *See* AR p. 337 (10/23/18 visit with Plaintiff's neurologist Dr. Murphy noting "mental status normal. Speech fluent"); AR p. 334 (10/31/17 Dr. Murphy visit noting "No depression, anxiety, or irritability…. Mental status normal. Patient's alert and oriented x 4. Recent and remote memory normal. Attention and concentration normal. Fund of knowledge normal.  Language fluent and normal."). *See* AR pp. 328, 331 (9/5/17 and 8/2/18 visits with Dr. Lalonde noting normal mood, alert and oriented, normal affect).  *See* AR p. 1296 (8/8/19 visit with Dr. Perniciaro noting normal mood, affect appropriate, speech normal, grossly oriented to person, place, and time).

watch movies and read.[110] Notably, in response to the Physical Assessment's question No. 3: "Identify the side effects of any medications which may impact [Plaintiff's] capacity for work, i.e., dizziness, drowsiness, stomach upset, etc.:" Dr. Bourg replied: "N/A."[111]   Plaintiff's ability to engage in the above-listed daily activities contradict Plaintiff's arguments that her mental impairments, medication side effects, and pain cause more than minimal limitations to her daily life.

As to consideration of non-severe impairments, the ALJ's decision specifically refers to Plaintiff's severe and non-severe impairments and the related record evidence, which shows that the ALJ considered them.[112] However, even if the ALJ had failed to consider Plaintiff's mental impairments, that is not error. "Because the evidence supported a finding that the claimant's mild mental limitations do not significantly affect her ability to work (not severe impairment at step two), the ALJ therefore did not err in declining *to consider* the claimant's mental impairments at step five (no need to consider non-severe mental impairment at step five).   Put another way, '[b]ecause substantial evidence shows that [claimant's] mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity.'"[113]

---

[110] AR pp. 48, 50-51, 56-57, 59, 61, 209-11.  Plaintiff testified that her flare-ups are "remissive, which means I don't have it all the time."  AR p. 50.

[111] AR p. 1249.

[112] *See* the ALJ's decision at AR p. 25 stating: "The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity" and referencing Plaintiff's severe impairments of R.A., degenerative disorders of the back, dysfunction of major joints (feet), and migraines, and the non-severe impairments, with explanations for why they were found non-severe, *i.e.*, fibromyalgia (non-severe because required findings/tender point testing was not established, but even if found severe, the RFC would account for it), intestinal disorders/IBS (non-severe because of limited testing and citing Dr. Arbour 5/8/18 note); anxiety disorder (non-severe because it caused no more than minimal limitations in Plaintiff's ability to perform basic work activities, and citing the PRT and record evidence).

[113] *Silvio,* 2021 WL 4498991, at *5 (emphasis in original), citing *Jeansonne*, 855 Fed.Appx. 193, 197-98.

As to the State agency opinions, Plaintiff argues that the ALJ improperly found that the opinions of Kahler and Lindsay were persuasive because they were not examining sources such as Dr. Bourg, and their opinions were just "bootstrapped authority" from the record evidence upon which they relied.[114]   However, the ALJ is tasked with evaluating the medical evidence, and he properly considered Kahler and Lindsay's opinions despite the fact that they were not Plaintiff's treating providers.[115]   The ALJ was also precluded from giving deference to any one medical opinion, including Dr. Bourg's opinion.   The ALJ properly found that, unlike Dr. Bourg's opinion, Kahler's and Lindsay's opinions that Plaintiff had only mild limitations in only two of the functional areas were persuasive because they were well supported and consistent with the record as whole, as the PRT references numerous treatment records of Plaintiff establishing that Plaintiff was found to have a normal mood, affect and behavior.[116]   Thus, these findings were consistent with the medical evidence of record, and not "bootstrapped."

Finally, Plaintiff argues that the ALJ failed to put mental limitations in the RFC, despite that the PRT found that Plaintiff had mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace.[117]   Plaintiff argues that if the PRT

---

[114] R. Doc. 12, pp. 23-24 citing *Staley v. Astrue*, No. 12-cv-184, 2013 WL 2950057 (E.D. Tex. June 13, 2011). However, *Staley* is distinguishable because in that case, the court found that the ALJ erred when he adopted the mental RFC assessment of the non-examining state agency physician, and failed to confront the more severe functional limitations independently found by two examining physicians. 2013 WL 2950057, at *4.   In this case, while Dr. Bourg's **Physical** Assessment indicates that Plaintiff would "frequently" have symptoms associated with her impairments severe enough to interfere with the attention and concentration required to perform simple work-related tasks, the Physical Assessment does not  provide any details or explanation of this response, nor does it actually assign any **mental** limitations. AR p. 1249.   Therefore, there is no inherent conflict between the Physical Assessment and the PRT  because neither contain mental limitations.

[115] The new standards for evaluating medical opinions and prior administrative medical findings have abrogated the treating physician rule.   *Pearson v. Comm'r of Soc. Sec.,* No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021), report and recommendation adopted, No. 120CV00166HSORPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) ("As such, ALJs are 'no longer required to give controlling weight' to the opinions of treating physicians.").

[116] AR p. 25, citing AR pp. 76-77 and AR pp. 90-91 (referencing Plaintiff's treatment records from 2017 through 2019 and noting that, while Plaintiff has a diagnosis of anxiety, her records consistently showed that Plaintiff had normal mood, affect, behavior, was fully alert and oriented, and was sometimes reported as not anxious).

[117] R. Doc. 12, pp. 24-25.

findings had been incorporated into the RFC, "it is likely that Plaintiff would be limited to unskilled work and unable to perform any of the jobs proffered."[118] However, as the Commissioner points out, mild limitations generally do not cause any functional limitation to an individual's ability to do basic work activities.[119] Plaintiff is incorrect that a finding of mild limitations in two of the four paragraph B criteria requires a mental limitation in the RFC. The limitations in the paragraph B criteria are specifically not a RFC assessment.[120] The RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work-related activities.*"[121] If the ALJ determines at step two that Plaintiff's mental limitations do not significantly affect her ability to work, as was the case here, then the ALJ is not required to find that the plaintiff has mental limitations at step five. "Generally, at step five, an ALJ considers the claimant's" RFC "as part of the determination of whether the claimant is unable to perform other substantial gainful activity."[122] In the instant matter, the ALJ found, at step two, that "[b]ecause the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere." Thus, substantial evidence supports the ALJ's findings that Plaintiff's mental limitations were not severe, mental limitations were not required in the RFC, and there was no basis to limit Plaintiff to unskilled jobs.[123] Accordingly, Assignment of Error Four has no merit.

---

[118] R. Doc. 12, p. 25.
[119] R. Doc. 14, pp. 12-13, citing 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1522).").
[120] *See* AR pp. 25-26, noting same.
[121] *Silvio,* 2021 WL 4498991, at *3, citing *Jeansonne,* 855 Fed.Appx. at 198.
[122] *Silvio,* 2021 4498991 at *3, citing *Jeansonne*, 855 Fed.Appx. at 197-98. Even so, the representational occupations provided by the V.E. are semi-skilled, not skilled, despite Plaintiff's professional and educational background, which also accounts for Plaintiff's mild mental limitations in two of the paragraph B criteria.
[123] *See, e.g., Silvio,* 2021 4498991 at *6.

### C. The ALJ Properly Considered Plaintiff's Subjective Allegations (Assignment of Error 3)

In determining whether a plaintiff is disabled, the ALJ must consider all of the plaintiff's symptoms, including pain, and the extent to which her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. However, statements about pain or other symptoms will not alone establish that the plaintiff is disabled.[124] If a claimant reports symptoms associated with a medically determinable impairment, the ALJ must follow a two-step process set forth in the regulations, which the ALJ did in this case.[125] The ALJ stated that he: "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."[126] After three and half pages of evaluating Plaintiff's testimony, the medical evidence of record, and the findings of the state Agency consultants, the ALJ stated "[a]fter careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[127]

---

[124] 20 C.F.R. § 404.1529. *See also* 20 C.F.R. § 404.1521 ("A statement of symptoms alone cannot establish the existence of an impairment or a disability.").

[125] *See* 20 C.F.R. § 404.1529, explaining the two step process, *i.e.*, first, whether there is a medically determinable impairment, *i.e.*, an impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques, that could reasonably be expected to produce a claimant's symptoms or pain; and second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. This is also recited in the ALJ's opinion at AR pp. 26-27.

[126] AR p. 26.

[127] AR p. 30.

Plaintiff argues that this was error because a number of her subjective allegations were not

properly considered by the ALJ, *namely*: Plaintiff could still be disabled, despite her longstanding

impairments;[128] the ALJ credited a medical record indicating that Plaintiff's headaches were stable

and her medication was working;[129] the ALJ improperly relied on Dr. Bourg's notes that

consistently showed no synovitis, full range of motion and normal strength;[130] the ALJ found that

Plaintiff's testimony regarding the limited use of her hands was not supported by the objective

---

[128] R. Doc. 12, p. 17, citing AR p. 30 and medical records indicating that, *e.g.*, Plaintiff was limited by her feet, had bad days, was fatigued and stressed, had migraines, had G.I. problems and chronic infections, and Plaintiff left her job because she was chronically getting sick. AR pp. 333, 445, 461, 472, 486, *etc.* However, as discussed above, the ALJ relied on medical records that indicated that Plaintiff continued to work for years with complaints of R.A./joint pain, migraines, and chronic infections and had only limited treatment for her G.I. issues. AR pp. 384, 472, 476, 486, 507, 512, 519, 529, 546, 748. The ALJ noted, and the records consistently reflect, that Plaintiff had normal mood, affect, and behavior. AR pp. 328, 331, 334, 337, 381, 383, 403, 502, 535, 571, 579, 583, 589, 1255, 1260, 1296.

[129] R. Doc. 12, pp. 18-19. As discussed, the ALJ noted that Dr. Murphy found that Plaintiff's headaches were stable and her medications were working well. AR pp. 28, 30, citing Dr. Murphy 10/23/18 visit at AR p. 336 and *see* p. 338. The ALJ noted that a 2017 MRI of Plaintiff's brain was negative. AR p. 28 and *see* AR pp. 337-39. Plaintiff also has the ability to inject herself with medication to treat headaches. AR pp. 56, 61. Plaintiff argues that Dr. Murphy's note is inconsistent under 20 C.F.R. § 404.1520b to the extent it references Plaintiff's "[e]pisodic migraines but stable. Mostly around her menstrual cycle," because Plaintiff does not have menstrual cycles. R. Doc. 12, p. 18 and *see* AR p. 61 (testimony regarding hysterectomy). However, the salient information in Dr. Murphy's note cited by the ALJ is that Plaintiff's migraines are stable, which is not contradicted by the erroneous part of the note relating to the timing of the migraines. Therefore, the ALJ could consider Dr. Murphy's finding of migraine stability. Plaintiff also argues that even though Plaintiff's headaches were found stable, they still occur monthly. R. Doc. 19, pp. 18-19. The ALJ noted that Plaintiff has a history of migraines but was able to work despite them, which detracts from Plaintiff's contention that monthly headaches limit her from working. AR p. 30, citing AR pp. 472, 476, 486, 507, 512, 519, 529, 546, 748 (medical records dating from 2013 and a physical therapy note from 2011 reflecting that Plaintiff was experiencing R.A./joint pain, hand pain, chronic headaches, flu, and respiratory infections while working) and *see* summary of earnings at AR p. 160. The ALJ noted that Plaintiff only sees Dr. Murphy for her headaches once a year. AR p. 27 and *see* AR p. 61.

[130] R. Doc. 12, pp. 19-20. Plaintiff argues that countervailing evidence to these findings must be taken into account, including that Plaintiff still experienced flare-ups and was found to have reduced range of motion, tenderness, and pain, *etc*. in her feet, hips, and spine at physical therapy visits. *Id.*, citing AR pp. 46, 48-49, 328-29, 1266-67, and 1281. However, the physical therapy records detract from Plaintiff's claims of pain. At Plaintiff's initial evaluation with Go Physical Therapy on 11/14/18, Plaintiff reported pain as a 4 on a scale of 10 that has only "moderately" interfered with her home/work activities and only interfered with her social/recreational activities "some of the time," and Plaintiff reported her overall health as "very good." AR p. 1281. Plaintiff's physical therapy records also show that Plaintiff improved with treatment. AR p. 1285 (12/3/18 physical therapy visit noting Plaintiff was "definitely feeling better" and "tenderness is much improved") and AR p. 1267 (12/19/19 visit with Elevate Wellness Studio noting that Plaintiff experienced some relief and "was much better" for 3-4 days after treatment.). Medical impairments that reasonably can be remedied or controlled by medication or treatment are not disabling. *Mulet-Rivera,,* 437 F. Supp. 2d at 633. Furthermore, the RFC considers Plaintiff's severe R.A. and back and foot impairments because it is limited to sedentary work with limitations as to climbing.

findings of record;[131] the ALJ did not mention the effects of Plaintiff's medication, including the

fact that they suppress her immune system and cause her to have frequent infections;[132] and the

ALJ failed to explain how he considered Plaintiff's testimony regarding her activities of daily

living.[133] These arguments have already been considered and rejected. The ALJ's evaluation of

the credibility of Plaintiff's subjective complaints is supported by substantial evidence and is

therefore entitled to judicial deference. [134] Assignment of Error Three also lacks merit.

## VI. RECOMMENDATION

The analysis above demonstrates that Plaintiff's claim of reversible errors are without

merit. The record considered as a whole supports the finding that the ALJ applied the proper legal

standards and substantial evidence supports the determination that Plaintiff is not disabled.

---

[131] R. Doc. 12, p. 20. As previously noted, the ALJ did not find Dr Bourg's hand limitations persuasive and was not required to order a C.E. Plaintiff's allegation regarding limited use of her hands is also not consistent with other evidence of record, *see above*.

[132] R. Doc. 12, pp. 20-21. As previously discussed, the ALJ noted that Plaintiff's testimony and medical records reflected that Plaintiff experienced chronic illnesses and her medication had side effects. AR pp. 27-30. Plaintiff's records consistently indicate that Plaintiff continued to work despite the illnesses and she only gets "mildly sick" with the flu. AR p. 547. Plaintiff's testimony indicated that she had learned to manage some of the medication side effects, and Dr Bourg indicated that Plaintiff did not have any side effects that would impact her capacity to work. AR p. 1249. *See* footnote on this issue, *supra*. *See Vaughan,* 58 F.3d at 131 (ability to work despite pre-existing condition supports ALJ's finding of not disabled) and *Villa,* 895 F.2d at 1024.

[133] R. Doc. 12, pp. 21-22. The ALJ considered Plaintiff's activities of daily living, including some of the testimony cited by Plaintiff. AR p. 27. However, despite her testimony about what she could not do, Plaintiff also testified and reported about many things that she could do that show her ability to work, *e.g.*, that she could drive her car to pick her son, laundry, household chores, go out by herself, handle money, *etc.*, and that she has only mild impairments in two of the paragraph B criteria. AR pp. 25, 50-51, 56, 209-11. While the V.E. testified that two or more absences a month would be too many to sustain a job, there is no persuasive medical opinion that suggests that Plaintiff would be absent that frequently, as Dr. Bourg's opinion on that issue was found non-persuasive. AR pp. 30, 67, 1250. Finally, while Plaintiff argues that further development of the record is needed because it could result in a finding that Plaintiff cannot sustain a job, citing *Wingo v. Bowen,* 852 F.2d 827 (5th Cir. 1988) and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), those cases are distinguishable. In *Wingo,* the Fifth Circuit found that the ALJ failed to consider the evidence, including subjective evidence, of all the plaintiff's impairments (including that she was not even capable of performing simple household chores on a sustained basis). *Wingo,* 852 F.2d at 830-31. In *Singletary,* the Fifth Circuit held that there was "substantial evidence to support Singletary's claim that he was unable to hold a job" because his "personal history indicated that he was never able to hold a job for long periods of time" and even his relatives would not employ him. *Singletary,* 798 F.2d at 822. In this case, the ALJ considered the evidence of Plaintiff's impairments, which was insufficient to support her claim that she could not sustain a job, particularly because Plaintiff worked for many years with the same symptoms and took medication that controlled them. AR p. 30.

[134] *Villa,* 895 F.2d at 1024 and *see* R. Doc. 14, p. 10.

Accordingly, **IT IS RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED,** and this action be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 2, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**